UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-80743-RUIZ/REINHART

SUNFLOWER CONDOMINIUM
ASSOCIATION, INC.,

Plaintiff,

v.

EVEREST NATIONAL
INSURANCE COMPANY,

Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DE 43]

Before the Court for disposition is the Defendant Everest National Insurance Company's Motion for Partial Summary Judgment ("Motion"). DE 43. The Motion was referred to me for a Report and Recommendation by the Honorable Rodolfo Ruiz. DE 57. I have reviewed the Complaint (DE 1), the Answer and Affirmative Defenses (DE 8), the Motion and its exhibits (DEs 41, 43), the Defendant's Statement of Undisputed Facts (DE 42), the Plaintiff's Response to the Motion and its exhibits (DE 50), the Plaintiff's Statement of Undisputed Facts (DEs 51, 52), and the Defendant's Reply (DEs 55, 56). I held oral argument on the Motion on April 1, 2020. DE 68. This matter is now ripe for decision. For the reasons discussed below, I recommend that the Motion be DENIED.

## BACKGROUND

Plaintiff Sunflower Condominium Association, Inc. ("Sunflower") is a condominium association comprising 33 residential multi-unit buildings, a clubhouse, and two small pump house

structures.  Sunflower was the insured under a commercial property insurance policy (the "Policy") issued by Defendant Everest National Insurance Company ("Everest").  Sunflower brings this breach of contract action for nonpayment of claims arising from property damage allegedly caused by Hurricane Irma on or about September 10, 2017.[1]  The Complaint seeks "compensatory damages for breach of contract for all unpaid and/or underpaid bills," interest, attorney's fees, and costs. DE 1-1 at 13.  Sunflower alleges that Everest wrongly denied coverage for property damage to roofs and building interiors.[2]  Everest now moves for partial summary judgment.

## LEGAL STANDARD

The legal standard for summary judgment is well-settled:

> A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia,* depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.
> . . .
>
> The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

---

[1] Neither party's Statement of Material Facts identifies the date of the hurricane.  Although the date is alleged in the Complaint (DE 1-1 at 5, ¶ 5), the Answer denies the allegations in that paragraph (DE 8 at 2-3).  Nevertheless, I take judicial notice that Hurricane Irma struck South Florida on or about September 10, 2017.

[2] For clarity, I will use the term "compensatory damages" when discussing the remedy that Sunflower seeks in this lawsuit.  I will use the term "property damage" when referring to the physical injuries to Sunflower's buildings.

*Rubenstein v. Fla. Bar,* 72 F. Supp. 3d 1298, 1307–08 (S.D. Fla. 2014) (J. Bloom) (citations omitted).

Federal Rule of Civil Procedure 56 and Local Rule 56.1 mandate the procedure for pleading (and responding to) a Motion for Summary Judgment.  Rule 56(c)(1) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Our Local Rule requires even greater specificity.  Each assertion or disputed fact must be "supported by specific, pinpoint references" to particular parts of the record. L.R. 56.1(b)(1)(B), (b)(2)(A).  "The pinpoint citations shall reference pages and line numbers, if appropriate, of exhibits, designate the number and title of each exhibit, and provide the ECF number of all previously filed materials used to support the Statement of Material Facts. When a material fact requires specific evidentiary support, a general citation to an exhibit without a page number or pincite (e.g., 'Smith Affidavit' or 'Jones Deposition' or 'Exhibit A') is non-compliant." L.R. 56(b)(1)(B).  The Court has discretion to disregard a factual assertion or dispute that is not properly supported.  Fed. R. Civ. P. 56(e), L.R. 56.1(c), (d).

## UNDISPUTED MATERIAL FACTS

1.      Sunflower is the condominium association for a multi-building community in Boca Raton, Florida. Defendant's Statement of Material Facts ("DSOF"). DE 42 at ¶ 7.

2.     Sunflower comprises 33 residential multi-unit buildings (designated building nos. 1- 33), a clubhouse (building no. 34), and two small pump house structures (building nos. 34 and 35).  DSOF at ¶ 8.

3.     Everest issued a commercial property insurance policy to Sunflower for the period from May 31, 2017 to May 31, 2018.  DSOF at ¶ 1.

4.     The Policy contains a provision regarding increased construction costs "incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of [the insured] property."  ("Increased Cost of Construction Coverage").  The baseline Policy provides $500,000.00 in Increased Cost of Construction Coverage per building. DE 41-2 at 22-46.  Sunflower purchased an endorsement that increased the amount of coverage to $1,000,000.00 per building. ("Ordinance or Law Endorsement"). DSOF ¶ at 3.

5.     Under both the Increased Cost of Construction Coverage and the Ordinance or Law Endorsement, Everest pays a claim only after the insured actually repairs or replaces the loss or damage, and only if those repairs are made within two years after the loss.  DSOF at ¶¶ 2, 3. Everest can extend the two-year time limit, but only in writing.  *Id.*

6.     Everest did not extend the two-year period for making repairs or replacements to the roofs or any other building component, nor was the Policy amended to waive the two-year requirement.  DSOF at ¶¶ 17, 18.

7.     The Policy contains a Florida Calendar Year Hurricane Percentage Deductible endorsement ("Deductible Endorsement").  DSOF at ¶ 5.  The Deductible Endorsement sets the applicable deductible for damage to each building as 3% of the building's insured value; the Policy specifies the agreed insured value of each building.  DSOF at ¶¶ 5, 6.

8.      The Policy values any loss based on "actual cash value at the time of the loss or damage" unless, within 180 days of the loss or damage, the insured notifies Everest that it wants replacement cost valuation ("Replacement Cost Option").  DSOF at ¶ 2.

9.      Sunflower first reported a claim to Everest on July 19, 2018.  DSOF at ¶ 11.

10.     Following the hurricane, Sunflower made repairs to the building roofs and interiors, but has only replaced the roof of Building 35, a small pump house near the clubhouse. DSOF at ¶ 9.[3]

11.     Sunflower seeks to recover for property damage to the buildings' roofs allegedly caused by Hurricane Irma, as well as amounts paid for repairs to interior damage to the buildings resulting from roof leaks allegedly caused by the hurricane.  DSOF at ¶ 10. [4]

12.     No government authority has enforced an ordinance or law or demanded a code upgrade or replacement of any building component, as a result of any damage to the buildings' roofs.  DSOF at ¶ 13.

13.     For buildings 1-34 and 36, less than 25% of the total roof area and less than 25% of each roof section was actually damaged by the hurricane and needs repair.  DSOF at ¶ 14.[5]

---

[3] Sunflower's Response to the DSOF states that Paragraph 9 is disputed, but lacks any citation to record evidence that contradicts the facts alleged in Paragraph 9.  Sunflower's Response offers only additional explanatory facts - that the repairs to roofs and interiors were "temporary" and that building roofs have not been replaced "because the tiles are no longer manufactured."  DE 51 at ¶ 9.

[4] Paragraph 12 of the DSOF alleges that the past repair costs claimed by Sunflower total $82,910.00.  Paragraph 12 further alleges that the past repair costs do not exceed the per-building hurricane deductible in the Policy for any building except building 35. DSOF at ¶ 12. These factual allegations are not properly supported by record citations, so they will not be considered.  *See* Fed. R. Civ. P. 56(e).

[5] Sunflower's Response states that Paragraph 14 is disputed.  DE 51 at ¶ 14.  Sunflower asserts, "[T]he actual damage to the existing tiles *along with the necessary additional collateral damage to effectuate the repairs* exceeds 25% of the roof surface." *Id.* (emphasis added).  This alleged fact

14.     For Building 35, the actual area of the roof that was damaged by the hurricane and is in need of repair is unknown, as the roof was replaced prior to inspection and no photos, video, or other documentation with contemporaneous proof of the alleged damage was provided.  In fact, it is not known whether the roof of Building 35 was even damaged by Hurricane Irma.  DSOF at ¶ 15.[6]

Sunflower's Response to the DSOF includes additional alleged material facts, as permitted by Local Rule 56.1(b)(2)(D).  They are:

1.  Any repairs are temporary and full replacement of the roofs is required.  DE 51 at 3, ¶ 1.

2.  The replacement cost for the roofs exceeds $3,400,000.00. DE 51 at 3, ¶ 2.

3.  The actual cash value for the roof damage is $3,158,094.42.  DE 51 at 4, ¶ 3.

4.  The actual damage to the roofs in addition to the collateral damage during repairs will cause the repairs to exceed 25%.  DE 51 at 4, ¶ 4.

Everest properly disputes each of these facts.  *See* DE 55.

## DISCUSSION

Everest's Motion frames this case as one in which "Sunflower seeks coverage for: (1) the cost of prior repairs made to building interiors and roofs, the amounts of which do not exceed the deductibles of the Everest policy; and (2) the future cost of replacing the roofs of all of the buildings at the condominium, which Sunflower claims is necessary to comply with the '25% rule'

---

does not contradict the assertion in the DSOF that the actual damage to existing tiles as the result of the hurricane does not exceed 25%.

[6] Here, again, Sunflower's Response states that Paragraph 15 is disputed, but fails to cite to any record evidence in support thereof.

of the Florida Building Code and/or as a consequence of Florida's 'Matching Law'". DE 43 at 1. Everest seeks partial summary judgment "to establish as a matter of law that Sunflower cannot recover under the Policy's Ordinance Or Law Coverage, that Florida's 'Matching Law' does not apply, that Sunflower is limited to claiming [compensatory] damages on an 'Actual Cash Value' basis, and that Sunflower is only entitled to covered damages, if any, in excess of the Policy hurricane deductibles." DE 43 at 3.

I begin with two observations. First, the disputes between the parties are limited. Sunflower concedes that Florida's "Matching Law" does not apply.[7] At oral argument, Sunflower clarified that it is not presently seeking recovery under the Replacement Cost Option; in the future, after repairs are completed, it may seek additional money from Everest based on the replacement cost. Sunflower agrees with Everest that it can only recover compensatory damages in excess of the deductibles. The parties also agree that there are disputed facts about the proper amount of Sunflower's claim, which must be resolved at trial. DE 43 at 3-4 (must be a trial to resolve whether the damage to Sunflower's buildings "are 'direct physical loss of or damage to Covered Property' caused by the hurricane, and were not preexisting or simply a result of normal wear and tear, [and whether] the 'Actual Cash Value' of the remaining covered roof repairs, together with the 'Actual Cash Value' of the prior covered repairs, exceed the Policy hurricane deductibles"). Therefore, several of the issues raised in the Motion are moot.

---

[7] Sunflower originally claimed that Florida Statute § 626.9744 required Everest to replace Sunflower's damaged roof tiles with matching tiles. DE 1-1 at 10, ¶ 28. Sunflower now concedes that Section 626.9744 does not apply because the Policy is a commercial policy. DE 50 at 5. In its Response, Sunflower asserts that Everest nevertheless is obligated to replace the entire roofs because the existing tiles have been discontinued and no plausible substitute exists. DE 50 at 5. Sunflower did not file a cross-motion to raise this issue. Because this argument was not raised by Everest in its Motion and is nonresponsive to the issues raised in that Motion, I do not address it.

Second, Sunflower's Response to Everest's Statement of Material Facts does not comply with the required procedures under Rule 56 and Local Rule 56.1, and therefore does not properly dispute some of Everest's material facts. *See supra*, fn. 3, 4, 6. Everest noted this non-compliance in its Reply filed on February 12, 2020. DE 56. At no time during the intervening two months did Sunflower request to correct its filings. That is why I am not affording Sunflower an opportunity to support or address these facts pursuant to Rule 56(e)(1). Rather, I exercise my discretion to consider the facts undisputed under Rule 56(e)(2). *See Mann v. Taser Intern., Inc.,* 588 F.3d 1291, 1302-03 (11th Cir. 2009) (giving "great deference" and applying abuse of discretion standard to trial court's decision to treat non-compliance with similar local rule as failure to dispute material facts).

I now turn to the merits of the issues raised in the Motion.

### *Must the values of the covered losses exceed the Policy deductibles?*

Both sides agree that the answer to this question is, "Yes." Everest asks the Court to "declar[e] that . . . Sunflower is only entitled to covered [property] damages, if any, in excess of the Policy hurricane deductibles," which are calculated based on 3% of the Policy amounts. DE 43 at 17. Sunflower's Response does not contest this assertion. DE 50 at 13. Everest concedes that there must be a trial to determine the amount of covered property damage and whether the value of the losses associated with that property damage exceeds the deductible amounts. DE 43 at 3-4. Accordingly, there is no dispute with respect to this issue that can be resolved by the Court at the summary judgment stage.[8]

---

[8] It appears that the parties disagree whether the 3% deductible applies on a building-by-building basis or applies to all 36 buildings collectively. *Compare* DE 43 at 16 ("The deductibles are calculated separately for, and applied separately to, each building at the condominium that sustains loss or damage.") *with* DE 50 at 13 (computing average deductible for all buildings). It is not

Notably, Everest takes potentially inconsistent positions. It concedes that a trial is needed, in part, to determine if "the 'Actual Cash Value' of the remaining covered roof repairs, together with the 'Actual Cash Value' of the prior covered repairs, exceed the Policy hurricane deductibles." DE 43 at 3-4. Yet, it also asserts that the undisputed facts establish that Sunflower's damages do not exceed the deductibles for Buildings 1-34 and 36. Everest also argues that the undisputed facts preclude coverage for Building 35. DE 43 at 3; DSOF at ¶ 15.

Even assuming Everest is pursuing the latter two arguments, it has not met its burden of showing that the undisputed material facts demonstrate that Sunflower's breach of contract damages are less than the Policy deductibles for some or all of the buildings. The DSOF asserts that Sunflower has claimed $82,910.00 in past repair costs for damages to all the buildings. DSOF ¶ at 12. Everest further asserts that the past repair costs exceed the deductible only for Building 35. *Id.* As support for these assertions, Everest cites to Sunflower's Interrogatory Responses (DE 41-4 at ¶¶ 4,5), Sunflower's most recent public adjuster estimate (DE 41-6), and the Policy itself (DE 41-2). None of the cited material, however, establishes the exact amount of the past repair costs.

First, the Policy provides no information about the amount of Sunflower's claim.

Second, the Interrogatory Responses do not establish the claim amounts. Those responses state:

> **4.** State with specificity and itemize all elements of damages and expenses you claim you are entitled to recover relating to the Loss and Claim, and include in your answer

---

necessary to decide this issue to resolve Everest's request for relief here: a declaration that Sunflower can only recover in excess of the Policy deductibles, whatever those amounts may be.

the factual basis for each item of damages or expenses, as well as an explanation of how you computed each item of damages, including any mathematical formula used.

**Answer:** Subject to but not limited to items on Preferred Public Adjusters Estimate with bates numbers P00001 – P00067. Xactimate was used to calculate and itemize Preferred Public Adjusters Estimate per the software. Pictures with bates numbers P00068 – P00747 also utilized. Estimated the damages to the property and what is required to be replaced per the Florida Building Code.

**5.** Identify any and all Documents and Communications pertaining to each item of damages or expenses stated in your response to Interrogatory no. 4 above.

**Answer:** Preferred Public Adjusters Estimate with bates numbers P00001 – P00067. Invoices with bates numbers P00748 – P00867. Pictures with bates numbers P00068 – P00747.

The response to Interrogatory 4 states that it is "not limited to" the identified items. Moreover, although both answers reference other documents by bates number, Everest has not identified where those bates-stamped documents can be found in the record.

Finally, the citation to the most recent public adjuster estimate lacks pin cites; it cites to the entirety of a 117-page document without any further guidance as to how the $82,910.00 amount was computed. As such, it fails to comply with Local Rule 56.1 and should not be considered.

Given the absence of credible evidence of the amount of the past repairs, summary judgment cannot be granted in Everest's favor on this issue.

***Is Sunflower eligible for coverage under the Ordinance or Law Endorsement?***

The Ordinance or Law Endorsement provides for three kinds of coverage:  Coverage A is "Coverage for Loss to the Undamaged Portion of the Building";  Coverage B is "Demolition Cost Coverage"; and  Coverage C is "Increased Cost of Construction Coverage."  DE 41-2 at 108-111.

Only the applicability of Coverage C is before the Court.  In its Response to the Motion for Summary Judgment, Sunflower takes the position that it is proceeding under Coverage C. [9]  At oral argument, Sunflower asserted for the first time that it was also proceeding under Coverage A. I do not consider this argument because a party may not rely on an argument not raised in its initial summary judgment briefing.  *In re Egidi,* 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's  initial brief  or raised for  the first time  in the reply brief  are deemed waived.");  *see also Case v. Eslinger,* 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time  of the summary judgment motions.").

---

[9] Specifically, it asserted that Coverage C "reads in relevant part as follows:

3.  Coverage C – Increased Cost of Construction Coverage

a.  With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

(1)  Repair or reconstruct damaged portions of that building; and/or

(2)  Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law."

DE 50 at 7.

Everest contends that even if a loss qualifies for coverage under Coverage C, the Policy requires Everest to make payment only after the covered repair is completed and only if that repair is completed within 2 years of the loss.  DE 41-2 at 110.  Everest cites to the following language in the Endorsement:

**3. Coverage C - Increased Cost Of Construction Coverage**

(2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

. . .

**E. Loss Payment**

**b.**　　With respect to the Increased Cost of Construction:

(1)　　We will not pay for the increased cost of construction:

(a)　　Until the property is actually repaired or replaced, at the same or another premises; and

(b)　　Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

DSOF at ¶ 3; DE 43 at 5.  In response, Sunflower argues that it can invoke the Law or Ordinance Endorsement even if it has not completed repairs because the "25% rule" of the Florida Building Code requires that the roofs be replaced.  Sunflower further argues that the Policy's two-year time limit is unenforceable under Florida law.

The parties agree that the 25% Rule (Section 611.1.1 of the Florida Building Code) requires replacement of an entire roof if more than 25 percent of the roof is damaged. [10]  The undisputed

---

[10] Section 611.1.1 of Florida's Building Code states: "Not more than 25 percent of the total roof area or roof section of any existing building or structure shall be repaired, replaced or recovered in any 12-month period unless the entire roofing system or roof section conforms to requirements of this code."

facts show that less than 25% of the roof tiles for buildings 1-34 and 36 were damaged as a direct result of the hurricane. Sunflower asserts, however, that the undamaged tiles will become damaged during repairs ("future damaged tiles") and are thus counted toward the 25% Rule. Everest contends that the future damaged tiles do not count. This issue need not be resolved because as I will now explain, the Policy's time limit is enforceable and therefore precludes coverage under the Law or Ordinance Endorsement for roof repairs to Buildings 1-34 and 36.

Sunflower asserts that the two-year time limit is unenforceable because Section 611.1.1 of the Florida Building Code "does not put any limitations on the time from the date off [sic] loss that repairs/replacements are done." DE 50. Everest correctly responds that parties are free to contract for a shorter reporting period. *See Royale Green Condominium Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 07-21404-CIV, 2009 WL 799429, at *5 (S.D. Fla. Mar. 24, 2009) (J. Cooke) (rejecting argument that limitation contained in policy's law or ordinance provision violated the Florida Building Code because "[p]arties entering into a contract are generally free to exclude coverage when an ordinance or law requires the insured to comply"). Here, as in *Royale Green*, the Policy is unambiguous. Sunflower received expanded Law or Ordinance coverage, but that coverage came at a price and with a deadline. Sunflower has not cited any persuasive authority to support its argument that the two-year time limit is unenforceable as a matter of law. Moreover, there is case law in this District that supports Everest's position. *See Arbor Keys Condominium Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 10-62008, 2010 WL 13097293, at *10 (S.D. Fla. Oct. 6, 2011) (J. Seitz) (finding similar time limitation on repair and replacement precluded coverage under policy's ordinance or law provision).

Building 35 presents a separate question. It is undisputed that Building 35 completed roof repairs within two years of Hurricane Irma. Everest's Statement of Facts asserts that the 25% Rule

(and by implication the Law or Ordinance Endorsement) cannot apply to Building 35 because the percentage of damage to that roof (and whether that damage can be attributed to Hurricane Irma) cannot be determined because the roof was repaired prior to inspection.  DSOF ¶ at 15.  Everest does not cite to the record to support this factual assertion.  Sunflower responds by simply saying, "Disputed" with no citation.  Hence, there is no credible evidence on either side.  Viewing the evidence in the light most favorable to Sunflower, it cannot be excluded that a fact finder could determine that more than 25% of the roof tiles at Building 35 were damaged.[11]

### *Is Sunflower entitled to Replacement Cost coverage under the policy?*

Sunflower is not currently seeking payment of its claims based on the Replacement Cost Option, although it may try to invoke that option in the future.  Therefore, this issue is not ripe for decision.  Everest is requesting an advisory ruling on a non-existent claim.

### *Remedy*

I now turn to whether Everest is entitled to partial summary judgment.  Rule 56(a) states, "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  The essence of a motion for summary judgment is that it asks the Court to definitively rule on a claim or defense (or an element of a claim or defense) by applying the law to undisputed facts.   That is why a party can obtain partial summary judgment on issues such as the existence of a contract, causation, or punitive damages – each of those things is a free-standing element, or in the words of Rule 56, a "part" of a claim or defense.

---

[11] I leave it to the District judge to decide whether evidence of future damaged tiles at Building 35 is relevant and admissible.

Here, the sole claim alleged in the Complaint is breach of contract.  Under Florida law, a "breach-of-contract claim has three elements: a valid contract, a material breach, and damages." *Glover v. Liberty Mutual Insurance Company,* 418 F. Supp. 3d 1161, 1171 (S.D. Fla. 2019) (J. Altonaga) (citations omitted). Everest's Motion does not seek a ruling that as a matter of law there is no valid contract or that no material breach has occurred.  At most, it challenges the compensatory damage element. But, Everest's Motion does not actually seek a judgment that the undisputed facts preclude Sunflower's compensatory damages for a specific type or exact amount of damages.  Instead, the Motion asks for declarations on non-dispositive issues about how the insurance policy can be interpreted and, derivatively, whether Sunflower's compensatory damages, if any, are *limited* by specific provisions of the Policy.

Everest also does not specifically ask for judgment on an affirmative defense or part of an affirmative defense.[12]  "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Wright v. Southland Corp.,* 187 F3d 1287, 1303 (11th Cir. 1999).  It "admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Bluewater Trading LLC v. Willmar USA, Inc.,* No. 07-61284-CIV, 2008 WL 4179861, at *1 (S.D. Fla. Sept. 9, 2008) (J. Cohn).  As relevant here, Everest's Answer identifies three purported affirmative defenses: (1) that Sunflower's breach of contract claim is "barred or limited by" the Policy deductibles (Fifth Affirmative Defense), (2) that "to the extent Plaintiff's claim includes coverage due to the enforcement of an ordinance or law, Plaintiff's claim is barred or limited by the terms of the Policy's Ordinance or Law Coverage Endorsement" (Sixth

---

[12] Everest's Reply asks for partial summary judgment on its Fifth Affirmative Defense.  A party cannot raise an issue for the first time in a reply brief.  DE 56 at 2.

Affirmative Defense), and (3) that Sunflower's "claim is barred or limited by" the Policy's Replacement Cost provision (Seventh Affirmative Defense).  DE 8 at 10-12.  It is not an affirmative defense to argue that the amount of compensatory damages is *limited* by the terms of the Policy.  *Torres v. TPUSA, Inc.,* No. 2:08–cv–618–FtM–29DNF, 2009 WL 764466, at *2 (M.D. Fla. Mar. 19, 2009) (A defendant's assertion that a "plaintiff's damages are limited by the applicable law under which they are brought . . . is not an affirmative defense.  [It is] simply a statement of law.").  Everest has not argued that the undisputed facts prevent Sunflower from recovering *any* compensatory damages.  Therefore, even if Everest has properly raised these three grounds, it is not seeking a dispositive ruling on a defense or part of a defense.

Because Everest's motion does not seek relief that disposes of a claim or defense, or a part of a claim or defense, it arguably is not proper as a motion for summary judgment.  At most, it seeks rulings that limit the scope of what evidence Sunflower can introduce at trial, what legal arguments it can make to the jury, and how the jury will be instructed. For example, the effect of ruling that Sunflower cannot invoke the Ordinance or Law Endorsement is to prohibit Sunflower from arguing for (or introducing evidence of) more than $500,000.00 in property damage for each building. Similarly, resolving the deductible issue does not dispositively adjudicate the breach of contract claim, in whole or in part.  That ruling does not affect the evidence that will be admitted at trial (i.e., the Policy limits and the estimated repair costs). At most, it affects whether Sunflower can argue (and whether the jury can be instructed) that the deductible is computed on a collective basis.

While Everest's goal of limiting and focusing the trial is admirable, it is not the purpose of a motion for summary judgment.  A motion for summary judgment is what its name says – a motion to obtain a *judgment* in whole or in part on a claim or defense.  A declaratory judgment

action is the proper vehicle for a litigant to have a court enter non-dispositive rulings about the legal rights of the parties to a contract based on undisputed facts. *Medmarc Casualty Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214 (S.D. Fla. 2011) (J. Marra).  Similarly, a motion in limine is the proper vehicle for a litigant to ask a court for a pretrial ruling that prohibits the opposition from making arguments that are improper as a matter of law (and from introducing evidence in support of those legally-unfounded arguments).  *See* Fed. R. Civ. P. 104(a).  Everest did not use either of these vehicles.

## CONCLUSION

Sunflower cannot recover compensatory damages unless the value of the covered property damage exceeds the Policy deductible, but there is a factual dispute about the value of the covered property damage.  Sunflower is not entitled to coverage under the Law or Ordinance Endorsement for any property damage to Buildings 1-34 and 36; there must be a trial to determine whether Building 35 can fall within the Law or Ordinance Endorsement.  No other issues are ripe for decision.  These rulings may clarify issues of law, but they do not dispose of any claim or defense, or any part of a claim or defense.

Accordingly, it is RECOMMENDED that Everest's Motion for Partial Summary Judgment be DENIED.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo Ruiz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions." 11th Cir. R. 3-1 (2016).

      **DONE AND SUBMITTED** in Chambers this 28th day of April, 2020, at West Palm Beach

in the Southern District of Florida.

                                    _____

                                    BRUCE REINHART
                                    UNITED STATES MAGISTRATE JUDGE