UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 19-CV-80743–RUIZ/REINHART

SUNFLOWER CONDOMINIUM ASSOCIATION, INC.,

        Plaintiff,

vs.

EVEREST NATIONAL INSURANCE COMPANY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Currently before the Court is Plaintiff's Motion for Partial Summary Judgment ("Motion"), ECF No. 95. I have reviewed the motion, the response in opposition, and the reply. For the reasons stated below, this Court **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment be **DENIED.**

## BACKGROUND

In this action, Plaintiff, Sunflower Condominium Association, Inc. ("Sunflower"), brings claims against Defendant, Everest National Insurance Company ("Everest"), for breach of contract for nonpayment of claims arising from property damage allegedly caused by Hurricane Irma on or about September 10, 2017. ECF No. 1 ¶ 1; *see* ECF No. 74 at 2, n. 1. Sunflower is a condominium association comprising 33 residential multi-unit buildings, a clubhouse, and two small pump house structures. Sunflower was the insured under a commercial property insurance policy (the "Policy") issued by Defendant Everest. ECF No. 41-1 ¶ 2. On or about July 19, 2018, Sunflower filed an insurance coverage claim with Everest. ECF No. 41-1. Everest made a partial payment of the

claimed amount but has denied the balance. The instant lawsuit was filed on May 3, 2019. ECF No. 1.  The Complaint seeks "compensatory damages for breach of contract for all unpaid and/or underpaid bills," interest, attorney's fees, and costs. ECF No. 1-1 at 13. Sunflower alleges that Everest wrongly denied coverage for property damage to roofs and building interiors. ECF No. 1-1 ¶ 43.  It seeks reimbursement for Actual Cash Value, not Replacement Cost Value.[1]  Everest denies the allegations in the Complaint and asserts multiple affirmative defenses.  ECF No. 8. Sunflower now moves for partial summary judgment on Everest's First, Third, Fourth, Sixth, and Eighth Affirmative Defenses.

## **LEGAL STANDARDS**

*1. Summary Judgment*

The legal standard for summary judgment is well-settled:

> A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.
> …
>
> The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

---

[1] "Actual Cash Value" means "'market value' or 'fair market value'," and accounts for the property's depreciated condition, whereas "Replacement Cost" does not. *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997); *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008).

*Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1307–08 (S.D. Fla. 2014) (J. Bloom) (citations omitted). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States,* 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 996 (11th Cir. 1990).

    2. *Contract Interpretation of Insurance Policies*

"In Florida, '[w]here the duty of an insurer rests upon the legal effect of the provisions of an insurance policy, the interpretation of the policy is a matter of law for the Court to determine, and is therefore amenable to summary judgment.'" *Sparta Ins. Co. v. Colareta*, 990 F. Supp. 2d 1357, 1363 (S.D. Fla. 2014) (J. Rosenbaum) (quoting *Great Am. Fid. Ins. Co. v. JWR Constr. Servs., Inc*., 882 F. Supp. 2d 1340, 1350 (S.D. Fla. 2012) (J. Huck)). "Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Prudential Prop. and Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). The terms of an insurance policy "should be taken and understood in their ordinary sense, and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties – not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins*., 819 So. 2d 732, 736 (Fla. 2002) (citation omitted).

A policy provision is ambiguous if there are two competing, reasonable interpretations of that provision. *See Cont'l Ins. Co. v. Roberts*, 410 F.3d 1331, 1334 (11th Cir. 2005). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). If there is no ambiguity, the contract must be construed according to its plain language and given effect as written. *See Sparta Ins. Co.,* 990 F. Supp. 2d at 1363.

> In construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect. Indeed, a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders.

*Gen. Star Indem. Co. v. West Florida Village Inn, Inc.*, 874 So. 2d 26, 30 (Fla. 2d DCA 2004) (internal citations omitted). *See also Steadfast Ins. Co. v. Celebration Source, Inc.*, 240 F. Supp. 3d 1295, 1300 (S.D. Fla. 2017) (J. Scola) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.") (quoting Fla. Stat. § 627.419 (2010)). "The application thus becomes a part of the agreement between the parties and the policy together with the application form the contract of insurance." *Zenith Ins. Co. v. Commercial Forming Corp.*, 850 So. 2d 568, 570 (Fla. 2d DCA 2003) (quoting *Mathews v. Ranger Ins. Co.*, 281 So. 2d 345, 348 (Fla. 1973)).

## **DISCUSSION**

1.   *Defendant's First Affirmative Defense*

As its first affirmative defense, Everest asserts that some of Sunflower's property damage is not covered by the Policy because it was not caused by Hurricane Irma. ECF No. 8 at 7. Everest cites the following provision of the insurance policy.

> We will pay for direct physical loss of or damage to Covered Property at the premises Described in the Declarations caused by or resulting from any Covered Cause of Loss.

ECF No. 41-2 at 60. Sunflower seeks to recover the cost to replace all roofs on all buildings in the condominium, including replacement of undamaged portions of the roof which have not suffered any "direct physical loss[] or damage." ECF No. 105 (Defendant's Statement of Undisputed Material Facts ("DSOF")) ¶ 42. Everest pleads, "some of Plaintiff's claimed loss or damage, including but not limited to roofs, was not the result of direct physical loss of or damage to Covered Property resulting from a Covered Cause of Loss." ECF No. 8 at 7. In other words, Everest argues that the current damage to the property is not covered by the Policy because it was caused by something other than Hurricane Irma.

Everest's Statement of Material Facts contends that "[s]ome of the roof tile damage identified during post-loss inspections was not caused by the hurricane, including but not limited to damages from 'wear and tear,' which is not a Covered Cause of Loss." ECF No. 105 ¶ 43. Everest cites the following portions of the record:

- DE 41-5, p. 5 (Deposition of Sunflower's Public Adjuster John Longfellow)

    - A. Well, as far as normal wear and tear is very -- not to get -- normal wear and tear is vague. And we were on these roofs several months after the hurricane. So these roofs being at the ages they are, there has to be wear and tear on these roofs, as far as maybe some prior repairs potentially or foot traffic of somebody being on the roof for whatever the reason, whether they were cleaning them or that kind of thing. So I'm sure we did observe some of that, yes.

- DE 92-20 at 86-87 (Deposition of Sunflower Corporate Representative Mary Geiser)

    - Q. Did the roofs on the Sunflower building have any wear and tear since they were installed in the year 2000?
    - A. The natural elements, I guess. We don't allow people to go up there.

- DE 92-9 at 42-43 (Deposition of Sunflower Expert Neil Hall)

    - Q. Do you believe that all the broken tiles you looked at in September 2017 -- 2019 were damaged by Irma?
    - A. No, but I –
    - Q. Yes or no. Yes or no.
    - A. Well, no, if I'm allowed to explain. I believe, as I have already said is that even -- I can't tell you how many that is. I suspect that number is small based on my analysis of the causation, and, therefore, the default I put in everything into the wind category because I have no compelling reason to not put it into the wind category.
    - Q. So the answer to my question is no, right? You don't believe they were all damaged by Irma?
    - A. That's correct.

*Id.*

In response, Sunflower states that Everest's assertion is disputed. ECF No. 111 at 7. Everest states:

> John Longfellow never testified definitively that there was wear and tear (D.E. 41-5, p. 5), Defendant's Corporate Representative never testified definitively that there was wear and tear (D.E. 92-20 T. 86-87), and Neil Hall testified that he does not know how many tiles he suspects were caused by things other than Hurricane Irma, but that he thinks it's a very small amount. (D.E. 92-9 T. 42-43).

*Id.* at 7.

It is not disputed that the Policy excludes coverage for damage caused by wear and tear. As these cited excerpts show, viewed in the light most favorable to Everest, there is a genuine

issue of material fact regarding whether some of the damage for which Sunflower seeks coverage was caused by "wear and tear," not by Hurricane Irma. Summary judgment is not warranted on the First Affirmative Defense.

2. *Defendant's Third Affirmative Defense*

As its Third Affirmative Defense, Everest asserts that some of Sunflower's property damage is not covered by the Policy because Sunflower did not use all reasonable means to preserve the property after Hurricane Irma. ECF No. 8 at 8-9. If that assertion is true, the Policy excludes coverage:

> We will not pay for loss or damage caused by or resulting from any of the following . . .
>
> **m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss;

ECF No. 41-2 at 112-15.

Sunflower concedes that after Hurricane Irma, it "started to get roof leaks but fixed them as they discovered them with repairs." PSOF ¶ 15. Sunflower claims it did not have enough money to replace the roofs. PSOF ¶ 27. Sunflower does not dispute that it "performed minor repairs that were below deductible." ECF No. 111 at 8. The repairs were temporary, not permanent, fixes. DSOF ¶ 44. Thereafter, roof leaks occurred for years, including leaks re-occurring on the same roofs where the temporary repairs were made. *Id.* ¶ 45.[2]

Viewing these facts in the light most favorable to Everest a reasonable trier of fact could conclude that Sunflower's decision to make only temporary roof repairs fell short of "us[ing] all reasonable means to save and preserve" the property after Hurricane Irma. Therefore, summary judgment on the Third Affirmative Defense is not warranted.

---

[2] Sunflower's Reply to the DSOF states that paragraphs 44 and 45 are disputed, but does not cite to record evidence that creates a genuine factual dispute.

*3.     Defendant's Fourth Affirmative Defense*

As its Fourth Affirmative Defense, Everest assets that some or all of Sunflower's property damage was caused by inadequate maintenance. ECF No. 8 at 9-10. The Policy contains the following exclusion:

3. We will not pay for loss or damage caused by or resulting from . . .

**c.** Faulty, inadequate or defective:

(4) Maintenance; of part or all of any property on or off the described premises.

ECF No. 41-2 at 112-15.

Everest's Statement of Material Facts asserts that the roofs had leaked before the hurricane and Sunflower had no maintenance program in place to regularly maintain the roofs. DSOF ¶ 46. Everest cites deposition testimony by Sunflower's property manager that Sunflower paid for a repair to the roof of Unit 97 in or about April 2015. *Id.;* ECF No. 92-20 at 15-16. The property manager also testified that, other than a biennial appraisal required by the insurance company, Sunflower did not have a program to inspect the roofs for damage or leaks. DSOF ¶ 46, DE 92-20 at 10. The property manager also testified that multiple roofs had been damaged by Hurricane Wilma in 2005 and repaired prior to Hurricane Irma. ECF No. 92-20 at 13-17.

Sunflower states that this assertion in Everest's Statement of Material Facts is "disputed" but does not cite any record evidence to contradict it. ECF No. 111 at 8. Sunflower merely cites the property manager's testimony that she did not recall a roof leak for Unit 97. *Id.;* ECF No. 92-20 at 16.

Viewed in the light most favorable to Everest, the fact that (1) Sunflower was aware of prior roof damage, including leaks, after Hurricane Wilma in 2005 and (2) Sunflower did not have a roof inspection and maintenance plan in effect prior to Hurricane Irma infers a genuine factual

issue whether lack of maintenance caused a portion of the damages now claimed by Sunflower. Summary judgment on this defense is not appropriate.

4.     *Defendant's Sixth Affirmative Defense*

Everest's Sixth Affirmative Defense asserts Sunflower is not entitled to coverage under the Policy's Ordinance or Law Coverage Endorsement. ECF No. 8 at 11. Sunflower first argues that Everest has not raised an affirmative defense because it is seeking to limit Sunflower's damages, not seeking a dispositive ruling. This argument is rejected. Judge Ruiz previously held that the applicability of the Ordinance or Law Endorsement can properly be resolved on the merits on a motion for summary judgment. ECF No. 116 at 9-10.

As discussed in prior rulings of the Court, the Policy contains multiple Ordinance or Law Coverages. Sunflower sought coverage under Coverage A and Coverage C. This Court has already held that Coverage C is not available to Sunflower. *Id.*

Coverage A provides additional insurance coverage if a portion of a building is damaged and an ordinance or law requires an undamaged portion of the building to be demolished:

> **1. Coverage A - Coverage For Loss To The Undamaged Portion Of The Building**
>
> With respect to the building that has sustained covered direct physical damage, we will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building. …

ECF No. 41-2 at 109. The only law or ordinance that Sunflower cites is Section 706.1.1 of the Florida Building Code. ECF No. 95 at 9-10. As I explained in a prior summary judgment order:

> The parties agree that the 25% Rule (Section 611.1.1 of the Florida Building Code) requires replacement of an entire roof if more than 25 percent of the roof is damaged. The undisputed facts show that less than 25% of the roof tiles for buildings 1-34 and 36 were damaged as a direct result of the hurricane. Sunflower

asserts, however, that the undamaged tiles will become damaged during repairs ("future damaged tiles") and are thus counted toward the 25% Rule. Everest contends that the future damaged tiles do not count.

Sunflower claims it is entitled to Ordinance and Law under Coverage A in this case because the 25% Rule will require demolition of the undamaged portions of the roof. Sunflower is entitled to summary judgment on the Sixth Affirmative Defense only if the undisputed facts show that Everest cannot prove a set of facts under which Coverage A does not apply here.

Everest objects that Sunflower has not properly pled an entitlement to coverage under Coverage A. Alternatively, Everest argues that Coverage A does not apply on the merits, but Everest has not filed a cross-motion for summary judgment. ECF No. 106 at 7-8. The Court is potentially required to address two legal issues of first impression: (1) whether removing and replacing a roof is the kind of "demolition" contemplated by Coverage A and (2) whether future damaged tiles count toward the application of the 25% Rule. The former issue requires the Court to interpret the terms of the Policy. Everest cites two cases from outside this district interpreting Coverage A, but neither apply the Florida Building Code. On the latter issue, Sunflower relies solely on the affidavit of one of its expert witnesses, Eduard Badiu, who opines that Section 706.1.1 includes future damaged tiles. I decline to consider Mr. Badiu's opinion because it is an improper opinion on the law. *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.") Sunflower cites no other legal authority interpreting Section 706.1.1.

I need not resolve these legal issues in order to dispose of the motion for summary judgment.[3] Inextricably intertwined with these issues is an underlying factual dispute about how many damaged tiles need to be replaced and whether other undamaged tiles need to be removed in order to make the required repairs. The parties have competing experts on these issues. In light of this situation, and viewing the evidence in the light most favorable to Everest, I cannot exclude the possibility that Everest is not required to provide coverage under Coverage A. The motion for summary judgment on the Sixth Affirmative Defense should be denied.

5.  *Defendant's Eighth Affirmative Defense*

Everest's Eighth Affirmative Defense asserts that Sunflower failed to give timely notice of the hurricane damage, did not take reasonable steps to protect the property from further loss, did not keep sufficient records of expenses, and did not cooperate in the investigation or settlement of the claim. ECF No. 8 at 12. Here, too, if these facts are proven, the Policy provides no coverage:

> **E. Loss Conditions**
>
> 2.  Duties In The Event Of Loss Or Damage
>
>     a.  You must see that the following are done in the event of loss or damage to Covered Property:
>
>         (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
>
>         (4) Take all reasonable steps to protect Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside in the best possible order for examination.
>
>         . . .

---

[3] Moreover, the resolution of this issue will affect the scope of the evidence admitted at the trial. That decision is best left to the trial judge.

>     (8) Cooperate with us in the investigation or settlement of the claim.

ECF 41-2 at 68-69.

Sunflower's Motion does not address the Policy's requirements, as asserted in the Eighth Affirmative Defense, that Sunflower (1) take all reasonable steps to protect the property from further damage and (2) cooperate in the investigation or settlement of the claim. For that reason, alone, the Motion for Summary Judgment on the Eighth Affirmative Defense must be denied.

Sunflower's Motion does address the unambiguous term of the Policy that requires Sunflower to give "prompt notice of the loss or damage." As the Eleventh Circuit explained in a case involving property damage from Hurricane Wilma:

> Under Florida law, the "question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.,* 152 So.3d 595 (Fla. 2d DCA 2014). The first step is to determine whether the insured provided timely notice. *Id.* Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted. *Bankers Ins. Co. v. Macias,* 475 So.2d 1216, 1218 (Fla. 1985).
>
> . . .
>
> [U]nder Florida law, "prompt," "as soon as practicable," "immediate," or comparable phrases have been interpreted to mean that notice should be given "with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case." *State Farm Mut. Auto. Ins. Co. v. Ranson,* 121 So.2d 175, 181 (Fla. 2d DCA 1960), *overruled in part on other grounds, Am. Fire & Cas. Co. v. Collura,* 163 So.2d 784, 793–94 (Fla. 2d DCA 1964); *see also LoBello,* 152 So.3d at 599–600. "Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Waldrep,* 400 So.2d at 785. "While the question as to what is a reasonable time, depending as it does upon the surrounding circumstances, is ordinarily for decision by the trier of facts, yet when facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the court." *Ranson,* 121 So.2d at 182.

*Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 Fed. App'x. 875, 879 (11th Cir. 2015).

Here, it is undisputed that more than 10 months elapsed between Hurricane Irma and Sunflower submitting its claim to Everest. Sunflower was aware of damages shortly after the hurricane, and began making roof repairs the same month. DSOF ¶ 44. However, Sunflower did not provide notice to Everest prior to July 19, 2018, because it did not believe the loss exceeded the deductible. *Id.* "Prompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible." *Yacht Club*, 599 Fed. App'x at 880; *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co., Ltd.*, No. 10-24310-CIV, 2012 WL 266438, at *4 (S.D. Fla. Jan. 30, 2012) ("an insured's good faith belief that the damage is trivial or not covered by the policy is insufficient to justify non-compliance with the policy's notice provision.") (J. Goodman). Viewed in the light most favorable to Everest, a reasonable trier of fact could find that Sunflower's notice was not "prompt."

Viewed in the same light, the undisputed facts do not meet Sunflower's burden of rebutting the presumption that Everest was prejudiced by the delay. Sunflower argues that no prejudice exists; it notes the undisputed facts that Everest was able to adjust the claim, including paying a portion of the claim and concluding that the balance of any damages did not exceed the policy deductible. Sunflower also notes that Everest's expert witnesses "were able to identify hurricane damages." ECF No. 95 at 13. Everest responds that it was prejudiced because, prior to notifying Everest of the Hurricane Irma claim, Sunflower made repairs to the building, including replacing the roof on Building 35. DSOF ¶ 44. Sunflower concedes making minor repairs that were below the deductible amount. ECF No. 111 at 8. A reasonable trier of fact could conclude that Sunflower's pre-claim actions prejudiced Everest's ability to assess and address any damage from Hurricane Irma.

Sunflower argues that the "reasonable notice" requirement in the Policy must be construed in the context of Florida law, which Sunflower asserts is incorporated into the Policy. Sunflower

argues, "Defendant's policy language goes against Florida law by requiring that Sunflower report a loss and complete all necessary repairs within 180 days in order to receive Replacement Cost coverage." ECF No. 95 at 15. For several reasons, this argument is irrelevant as to whether Sunflower is entitled to summary judgment on Everest's Eighth Affirmative Defense. First, the 180 day reporting requirement for replacement cost coverage is not contained in the policy exclusion that forms the basis for the Eighth Affirmative Defense. Second, Sunflower is not asserting a claim for replacement cost coverage in this lawsuit. ECF No. 89 at 6; *see* ECF No. 90-1 at 15-16. Third, the Court has already ruled that the Policy can incorporate reporting deadlines that are shorter than those permitted under Florida statute. ECF No. 74 at 13; *see Royale Green Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 07-21404-CIV, 2009 WL 799429, at *5 (S.D. Fla. Mar. 24, 2009) (J. Cooke) (rejecting argument that limitation contained in policy's law or ordinance provision violated the Florida Building Code because "[p]arties entering into a contract are generally free to exclude coverage when an ordinance or law requires the insured to comply").

## RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that the Plaintiff's Motion for Partial Summary Judgment [ECF No. 95] be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THEY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**DONE AND SUBMITTED** in Chambers this 10th day of November, 2020 at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
United States Magistrate Judge